UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRADLEY S.,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C18-5265-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is REMANDED for further administrative proceedings.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1984.[1] He completed two years of college and obtained an associate's degree, as well as a license to work as an appraiser. (AR 259, 459, 509-10.) Plaintiff

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

previously worked as a cashier/checker, real estate appraiser, host, floor covering salesperson, and lifeguard. (AR 259, 448, 459.)

Plaintiff filed DIB and SSI applications in November 2012, alleging disability beginning January 1, 2012. (*See* AR 10.) His applications were denied initially and on reconsideration.

ALJ Tom Morris held a hearing on May 1, 2014, taking testimony from plaintiff and a vocational expert (VE). (AR 26-76.) At hearing, plaintiff amended his alleged onset date to June 1, 2012. (AR 31-32.) On June 27, 2014, the ALJ issued a decision finding plaintiff not disabled. (AR 10-21.) Plaintiff timely appealed and the Appeals Council denied the request for review (AR 571-75), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

In an Order dated May 6, 2016, the Court remanded the matter to the Commissioner for further administrative proceedings. (AR 586-92.) The Court directed the ALJ to reconsider the severity of plaintiff's ulcerative colitis at step two; to reconsider an opinion of an examining physician and, if necessary, to seek clarification from the physician regarding that opinion; and to reconsider plaintiff's symptom testimony in light of reassessed medical and testimonial evidence relating to ulcerative colitis. (*Id*.) The Appeals Council remanded the case to the ALJ for proceedings consistent with the Court's Order. (AR 595.)

On October 20, 2016, ALJ Morris held a second hearing, taking testimony from plaintiff and a VE. (AR 457-504.) At hearing, plaintiff requested a closed period of disability from his amended alleged onset date of June 1, 2012 through December 31, 2015. (AR 461-62.) The ALJ thereafter held a third hearing, on July 11, 2017, taking testimony from plaintiff, a VE, and a medical expert (ME). (AR 505-51.) On January 31, 2018, the ALJ issued a decision finding plaintiff not disabled within the closed period. (AR 437-50.) Plaintiff now appeals that decision.

ORDER
PAGE - 2

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found that, while plaintiff performed some work activity, he had not engaged in substantial gainful activity since the amended alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's spine disorder, left-sided ulcerative colitis, affective disorder, anxiety disorder, and substance addiction disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work with the following limitations: frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, crawl, and bend; must avoid concentrated exposure to vibrations and hazards (such as dangerous machinery and unprotected heights); can perform unskilled, routine, repetitive tasks and familiar detailed tasks; can be group interaction for work tasks on an occasional basis; work tasks should not take claimant away from near access to bathrooms or the ability to go to the bathroom;[2] and claimant

---

[2] A typographical error regarding bathroom access is harmless given that the RFC clearly contemplates work tasks that should *not* take a person away from near access to bathrooms. (*Compare* AR 442, *with* AR 539.)

would be off task for ten percent of the workday. With that assessment, the ALJ found able to perform his past relevant work as an appraiser, host, floor covering salesperson, and cashier.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With VE assistance, the ALJ also found plaintiff capable of performing other jobs, such as work as a garment folder, coffee roaster helper, and tying machine operator.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing medical evidence and opinions, failed to fully and fairly develop the record, and erred in rejecting his symptom testimony. He requests remand for an award of benefits or, alternatively, further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed. As discussed below, the Court concludes this matter requires further administrative proceedings to address the evidence associated with plaintiff's ulcerative colitis.

Plaintiff raises multiple challenges relating to his ulcerative colitis. He avers error in the ALJ's consideration of the opinions of consultative examining physician Dr. Raymond West and ME Dr. John Daller, as well as a failure to develop the record.

Some of plaintiff's arguments lack merit. The ALJ did not, for example, violate the law of the case doctrine by initially crediting Dr. West's opinion as to a need for "at least occasional and possibly prolonged breaks" (AR 375) and then discrediting the opinion on remand. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) ("The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case."). As the Court previously found, the ALJ purported to credit Dr. West's opinion, but did not actually account for it in the RFC. (Dkt. 25 at 6.) On remand, the ALJ properly complied with the Court's directive to reconsider Dr. West's opinion and, in so doing, properly considered new evidence, including ME testimony and updated medical records. *Stacy*, 825 F.3d at 567 (doctrine should not be applied "when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust."; district court did not abuse its discretion in finding no error in ALJ's altered step four conclusion in light of new testimony obtained on remand). Nor was the ALJ required to seek clarification from Dr. West. The Court ordered the ALJ to "reconsider Dr. West's opinion and, *if necessary*, seek clarification from Dr. West." (Dkt. 25 at 6 (emphasis added).)

The Court does, however, find error in the ALJ's consideration of the evidence. While the ALJ did not err in obtaining testimony from Dr. Daller, rather than seeking clarification from Dr. West, the testimony from Dr. Daller and the ALJ's consideration of that testimony complicates, rather than elucidates the evidence relating to plaintiff's ulcerative colitis. Dr. Daller opined plaintiff's condition necessitated access to a bathroom, and pointed to medical

records noting bowel movements four-to-five times and five-to-six times a day, and one record of his need to change his clothes following a bowel movement. (AR 525-26.) The ALJ at that point interrupted Dr. Daller's testimony, questioning whether this reflected merely self-reporting or credible evidence of the frequency of plaintiff's bowel movements. (AR 526.) While allowing Dr. Daller to testify that evidence of frequency necessarily relied at least in part on self-reports documented in the medical record, the ALJ again cut off testimony as to frequency, stating: "I understand. Okay. So we got that the [sic] bathroom. What . . . other functional limitations are supported by the objective record?" (AR 527.) Dr. Daller subsequently and only vaguely referenced bathroom breaks in relation to limitations in standing, walking, and sitting. (AR 528 ("But in terms of standing, walking, sitting with the accommodation for a bathroom break regardless of which situation he would be in, I think that those could be accommodated. I don't think that there's any significant work issue."))

When plaintiff's counsel attempted to obtain further testimony on this issue, the ALJ interjected that Dr. Daller could testify only in relation to medical evidence, as opposed to prior testimony from plaintiff. (AR 529-32.)[3] Within a continued exchange between the ALJ and counsel as to proper questions for the ME, counsel depicted an individual who had abdominal cramping requiring he lay down thirty-to-forty minutes on average a couple of times a day, the four-to-five or five-to-six bowel movements Dr. Daller previously described, and requiring ten-to-thirty minutes or longer in the bathroom for each bowel movement depending on whether or not he had soiled his clothing. (AR 530-32.) Dr. Daller testified:

> So the hypothetical that [plaintiff's counsel] posed in terms of
> would a hypothetical patient with ulcerative colitis hypothetically

---

[3] Plaintiff did not offer any symptom testimony at the hearing with Dr. Daller. At this third and final hearing, plaintiff provided testimony relating to his education, current and prior work activity, prior substance use, and participation in support groups. (AR 508-13, 542-44, 549-551.)

ORDER
PAGE - 6

> have the experiences that you described, the answer to that question would be yes. The second part of that, did I find evidence in the medical records where I could corroborate that is what the specific Claimant in this case is experiencing, the answer to that would be no.

(AR 532.) He also testified that, to the extent there was only one record reflecting a report of needing to change clothes, the record was "not supportive of that position." (AR 533-34.)

Again, however, Dr. Daller did not provide testimony limited to his own finding that the medical record supported the conclusion plaintiff's condition resulted in four-to-five or five-to-six bowel movements a day, and how that evidence of frequency did or did not translate into a specific functional limitation. Nor is it clear whether Dr. Daller had an opinion as to evidence of bathroom break duration, or urgency of bathroom breaks separate and apart from accidents resulting in soiled clothing. (*See, e.g.*, AR 391 (December 2013 report of two near accidents while driving and requiring he have a bowel movement in a parking lot and on the side of the road); AR 824 (October 2015 report of no accidents, but frequent emergencies, including the need to pull off the road once).)

The ALJ's decision does not resolve the deficiencies in the testimony or other evidence. He does not clarify whether he accepted Dr. Daller's testimony that issues such as the frequency of bathroom breaks necessarily relied at least in part on self-reports documented in the medical record. He states only that Dr. Daller "did not testify that the claimant's condition would cause frequent, excessive, and prolonged breaks throughout the workday." (AR 443.) The ALJ also, without mentioning the circumscribed nature of the ME testimony, states that Dr. Daller "did not see any medical opinions contradicting his opinions regarding the claimant's physical [RFC]." (AR 444; *see also* AR 537-38 (testifying he did not see any medical opinion significantly different from his own).) The ALJ further, and without any discussion, altered the prior RFC

adopted by omitting a previously assessed need for "one additional break of customary duration during the workday." (AR 15.)

The Court finds the ALJ's conclusions regarding the medical evidence and opinions associated with plaintiff's ulcerative colitis during the closed period to lack the support of substantial evidence. On remand, this matter should be assigned to a new ALJ. The ALJ should obtain supplemental ME testimony addressing plaintiff's ulcerative colitis and the issues of frequency, duration, urgency, and accidents. The ME testimony should also directly address the opinion evidence from Dr. West. If necessary, the ALJ should request clarification from Dr. West as to the basis and support for his opinion that plaintiff required at least occasional and possibly prolonged breaks.

Because evidence obtained on remand may implicate the remainder of the decision, the ALJ should reassess plaintiff's symptom testimony, the RFC, and the conclusions at steps four and five. With respect to plaintiff's ability to perform past relevant or other work, the ALJ must ensure any VE testimony relied upon includes consideration of any accepted limitations associated with bathroom breaks, including any requirements in relation to frequency, duration, urgency, or accidents.

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this 18th day of December, 2018.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 8